UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LEGENZOFF,

        Plaintiff,

v.

MICHAEL STECKEL, et al.,

        Defendants.

_____/

CASE NO. 2:11-cv-11405

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANTS MATTHEW CLOSURDO AND CITY OF HARPER WOODS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Matthew Closurdo and City of Harper Woods' Motion for Summary Judgment. (Doc. 54). On April 4, 2011, Plaintiff James Legenzoff filed a complaint against six municipalities and seven individual police officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause. The complaint also sought § 1983 damages against the municipalities based on their unconstitutional practice, policy, or custom of inadequate training and/or supervision of the officers under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Legenzoff abandoned his Monell claims. (Doc. 71 at 1). For the reasons stated below, the Court **GRANTS** Defendants Matthew Closurdo and Harper Woods' motion.

    **I.**    **STATEMENT OF FACTS**

        **A.**    **Background**

This case arises out of the misidentification of Plaintiff James Legenzoff as the "Suave Senior," an elderly man allegedly responsible for numerous thefts around the

Detroit area. The thefts had the same *modus operandi* and began in the summer of 2007 in Warren, Michigan. Witnesses described the suspect as a white male in his seventies with white hair, about 5'10" and weighing 170 pounds. (Doc. 1 at 6). The suspect allegedly knocked on the victim's door and identified himself as a neighbor. (Id. at 7). He then invited himself in for coffee, and after excusing himself to use the bathroom, stole money or personal items from the house. (Id.)

On August 29, 2007, Warren police questioned Legenzoff at a truck dealership. (Id.) They obtained his driver's license photograph and presented it to witnesses who were unable to identify him as the perpetrator. (Id.) This photograph aired on the news. (Id.) When similar larcenies occurred in St. Clair Shores, Warren police shared Legenzoff's photograph and information with St. Clair Shores police. This information eventually made its way to Canton Township, Redford Township, Fraser, Roseville, and Harper Woods.

### B. Harper Woods "Suspicious Person"

On May 6, 2008, Maria Posa, an 86 year-old resident of Harper Woods, called the police to report a suspicious person. (Doc. 58, Ex. 1). Posa stated that a white male in his 50s or 60s, 5'10" weighing 165 pounds pounded on her door loudly. (Id.) After she answered the door, the man stated that he was a neighbor and wanted to visit. (Id.) Posa declined because she had an appointment. (Id.) The man then asked for a ride, and Posa drove him to 8 Mile and Gratiot. (Id.) While in the car, the suspect repeatedly distracted Posa and reached into the back seat near her purse. Posa contacted the police, but did not report a crime.

On January 7, 2009, Posa contacted the police regarding a story on the news "where a subject, [Legenzoff], had been arrested for stealing money from senior citizens." (Doc. 58, Exs. 2, 3). Posa also mentioned she discovered approximately $60 missing from her purse after she gave a ride to the suspect, eight months earlier. (Id.) She identified the suspect as 5'6" weighing 150 pounds, which differed from her previous statement. (Doc. 58, Ex. 4, at 63). Defendant Matthew Closurdo, a Harper Woods detective, took the call from Posa. (Doc. 58 at 4). He did not participate in the original May 2008 complaint. (Id.)

After speaking with Posa on the phone, Closurdo viewed the news report identifying Legenzoff. (Id. at 5). Prior to meeting with Posa, Closurdo contacted a Roseville police officer who confirmed that Legenzoff was arraigned on charges in Roseville and Fraser, but currently out of custody on bond. (Doc. 54, Ex. B, at 46, 48). Closurdo then created an array of six photos using the CLEMIS picture-link system, which included Legenzoff's photo. (Id. at 6). Closurdo showed the array to Posa, who identified Legenzoff's picture. (Id. at 7). Posa brought a newspaper clipping of Legenzoff's picture with her. (Doc. 71, Ex. 13, p. 31). On January 12, 2009, Closurdo sent Plaintiff a letter asking Legenzoff to contact him to complete the investigation. (Id.) The letter warned that "failure to respond could result in criminal charges being brought forth against you." (Doc. 58, Ex. 7).

### C.    The Warrant and Arrest

On January 22, 2009, Legenzoff appeared at the Harper Woods police station with his attorney. (Doc. 58 at 8). Closurdo asked Legenzoff several questions, including where he was on the date Posa reported the suspicious person. (Id.)

3

Legenzoff responded that he was at Campbell Ewald (a consulting firm) in Warren. (Doc. 58, Ex. 4, at 56).  He offered to show Closurdo his timecard to prove his alibi, but Closurdo refused it stating, "that would be something the prosecutor is interested in." (Id. at 55-57).

On January 28, 2009, Closurdo requested a warrant, which was authorized the next day.  (Doc. 58, Ex. 10).  The request did not mention that Posa reported the money missing eight months after the incident, Posa brought a picture with her to the photo array, Legenzoff offered exculpatory evidence to prove his alibi, or the inconsistent physical descriptions provided by Posa.  (Doc. 58 at 8-9).  After the warrant issued, Legenzoff turned himself in on February 10.  During the preliminary examination, Posa was unable to identify him as the person to whom she provided a ride.  (Id. at 9).  The charges were immediately dismissed.  (Id.)

### D.     The Complaint

On April 4, 2011, Legenzoff filed a 42 U.S.C. § 1983 complaint against the municipalities and individual officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments.

### II.     STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52

(1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

### III.  ANALYSIS

Legenzoff's claims are dependent upon whether sufficient probable cause existed to request a warrant. See Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (reversing district court's denial of qualified immunity because defendants had probable cause to arrest plaintiff). He argues questions of fact exist regarding the validity of the identification procedures along with the constitutionality of the steps taken, or lack thereof, to determine probable cause. Specifically, he asserts the warrant request

5

omitted exculpatory evidence and the inconsistencies in the statements of witnesses. Closurdo raised the defense of qualified immunity, which also turns on the sufficiency of probable cause.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005) (quoting United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993)). To determine whether probable cause exists, the court must examine the totality of the circumstances and whether the facts and circumstances known to the officer were "sufficient to warrant a prudent person" to believe that the individual committed the offense. Hinchman v. Moore, 312 F.3d 198, 205-06 (6th Cir. 2002).

A claim of unlawful arrest "requires a plaintiff to prove that the arresting officer lacked probable cause." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). In order to prevail on a claim of malicious prosecution under § 1983, the plaintiff must show four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." [citations omitted]. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. [citations omitted]. Third, the plaintiff must show that, "as a consequence of a legal proceeding, "the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. [citations omitted]. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. [citation omitted].

Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010).

Public officials engaged in the performance of discretionary functions are entitled to qualified immunity from civil liability to the extent "their conduct does not violate

6

clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  An official who violates a clearly established right may not rely on the defense of qualified immunity.  See Camreta v. Greene, 131 S.Ct. 2020, 2030-31 (2011).  Thus, in order to overcome such a defense, a plaintiff must demonstrate that a constitutional violation has occurred and that the right was clearly established at the time it was violated.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

Legenzoff sets forth two theories in order to demonstrate a constitutional violation: (1) Closurdo acted without probable cause in seeking a warrant, and (2) Closurdo created an unduly suggestive photo array in order to secure a false identification.  Regarding the photo array, Legenzoff asserts it was unduly suggestive because Posa's identification was tainted by the news report.

### A.    Probable Cause

The right to be free from warrantless arrest without probable cause is an actual constitutional right clearly established under the Fourth Amendment.  See Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000).  Therefore, Legenzoff must demonstrate Closurdo did not have sufficient probable cause when he requested the warrant.  In support of his argument of insufficient probable cause, Legenzoff identifies numerous errors: (1) Posa had already seen Legenzoff on the news, (2) Posa's physical descriptions were inconsistent, (3) Posa did not mention the loss of $60 until eight months after her contact with the suspicious person, (4) Closurdo did not investigate the inconsistencies, and (5) Legenzoff offered exculpatory evidence.

Contrary to Legenzoff's argument, the fact that Posa recognized him in the news does not negate probable cause merely because "Closurdo knew that Posa's identification of Legenzoff in the [photo array] was inevitable." (Doc. 58 at 16). The question is whether, under the totality of the circumstances, the process used, even if unduly suggestive, created a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 109-14 (1977); see also Mikel v. Thieret, 887 f.2d 733, 738 (7th Cir. 1989) (holding that victim's identification of suspect in a photo array after seeing the suspect in the newspaper did not create a substantial likelihood of misidentification). Legenzoff also relies on Good v. Curtis, 601 F.3d 393 (5th Cir. 2010). However, unlike the officer in Good, Closurdo did not manipulate any photograph and never conducted a live array. Posa recalled the similarity in behavior and appearance of the suspect to whom she provided transportation in relation to the descriptions on the news report. Closurdo then showed the photo array to Posa only to confirm her identification.

As discussed above, the fact that Posa had already seen Legenzoff's picture on the news and brought in a newspaper clipping of Legenzoff did not lead to a likelihood of misidentification. Closurdo acted reasonably under the circumstances in relying on her identification. He corroborated the suspect's name by contacting Roseville police who arrested the same suspect. Closurdo had no reason to believe Posa was lying or that her statements were untrustworthy. The photo array was computer-generated, and included suspects of the same race, gender, hair color, height, weight, and dress. Legenzoff provided no evidence or allegations that Closurdo sought to frame him or that Closurdo manipulated his photo.

Moreover, Closurdo did not need to conduct the photo array. Posa positively identified Legenzoff from a news story reporting his arrest in another locale for stealing money from senior citizens with a similar *modus operandi.* (Doc. 58, Exs. 2, 3). Posa drove the suspect from her residence to 8 Mile and Gratiot, about a fifteen-minute drive. This provided ample opportunity for Posa to view the suspect's facial features. "Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect." Phillips v. Allen, 743 F. Supp. 2d 931, 941 (N.D. Ill. 2010). Furthermore, Closurdo contacted Roseville police to make sure Legenzoff was the same suspect they arraigned. (Doc. 54, Ex. B, at 46, 48). The procedure used by Closurdo was not unduly suggestive, nor did it create a substantial likelihood of misidentification.

The fact that Posa's physical descriptions were somewhat inconsistent does not make her an unreliable witness. Posa originally described the suspicious person as 5'10' weighing 165 pounds. (Doc. 58, Ex. 4, at 63). Later, the description changed to 5'6" weighing 150 pounds. Not only is the difference minimal, but Posa consistently described the suspect's other physical traits of race, gender, white hair color, as well as his "nicely dressed" appearance. That Posa did not come forward with the loss of $60 until eight months later is of little import. Posa stated she discovered the missing money the day after she filed the suspicious person report. Closurdo's failure to investigate these inconsistencies in Posa's physical descriptions and statements do not negate probable cause. Because "eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity."

9

Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999). Again, Closurdo had no reason to doubt Posa's credibility based on these minor inconsistencies.

Finally, Closurdo's refusal to investigate Legenzoff's timecard or other exculpatory evidence is not fatal to a finding of probable cause. See Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000) ("[F]ailure to pursue a potentially exculpatory lead is not sufficient to negate probable cause."). Closurdo did not know whether the timecard was genuine and was entitled to disbelieve Legenzoff's alibi. See Gomez v. Atkins, 296 F.3d 253, 264 (4th Cir. 2002) ("A reasonable officer, however, was not obliged to credit [defendant's] exculpatory story."). Once an officer establishes probable cause through a reasonably credible witness, he is "under no duty to investigate further or to look for additional evidence which may exculpate the accused." Ahlers, 188 F.3d at 371.

Based on the totality of the circumstances, Closurdo had probable cause to support his warrant request based on his reasonable belief that Legenzoff was the perpetrator. Any concern Closurdo had about Posa's initial identification from the news report was dispelled when Closurdo called the Roseville police and learned Legenzoff had been arrested for similar crimes. Closurdo acted as a reasonable officer under the circumstances, and a reasonable jury could not find a lack of probable cause to support Closurdo's request for a warrant.

### B.     Unduly Suggestive Identification Procedures

It is undisputed that Closurdo is a public officer and conducting a photo array falls within his discretionary authority as a detective. Therefore, it falls upon Legenzoff to demonstrate Closurdo violated a clearly established "constitutional right of which a reasonable person in the official's position would have known." Silberstein v. City of

Dayton, 440 F.3d 306, 311 (6th Cir. 2006). In determining the issue of qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether the right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999).

Legenzoff failed to allege a deprivation of an actual constitutional right regarding his claim that the right to be free from unduly suggestive identification procedures is an independently actionable right under § 1983. Legenzoff argues such a right exists and it is clearly established that "the manipulation of a photo line-up to produce a false identification from an eyewitness constitutes a violation of due process rights secured by the Fourteenth Amendment, which is actionable under 42 U.S.C. § 1983." (Doc. 58 at 10). Although Legenzoff relies upon Manson v. Brathwaite, 432 U.S. 98 (1977) and Good for support, his reliance is misplaced. In Brathwaite, the Supreme Court held that witness identifications resulting from unduly suggestive identification procedures must be excluded from evidence, not that an independently actionable constitutional right to be free from such procedures exists.

In Good, the officer intentionally framed the defendant by manipulating his photo to resemble the victim's description. Good, 601 F.3d at 396. The officer told the defendant that he was going to "fix" the photo by altering the lighting to make it match the "dark tan" skin described by the victim. Id. The defendant was identified in a live array and then convicted, but exonerated by DNA evidence nearly 20 years later. Id. at 397. More importantly, in determining the conduct of the officer was a violation of due process under the Fourteenth Amendment, the court in Good stated:

11

> The reason for the misidentification, we must assume at this summary judgment juncture, was [the officer's] concerted efforts to manipulate the photo. The Supreme Court's "suggestive array" suppression test announced in Manson v. Brathwaite, 432 U.S. 98 (1977), *is not designed for and does not apply in the context of a § 1983 suit following a DNA exoneration for a conviction derived from police conduct intentionally designed to procure a false identification by unlawful means.*

Id. at 398 (emphasis added). It is clear the court did not rely on the unduly suggestive identification procedure in its conclusion. Instead, the court found the "concerted effort on the part of a police officer to 'frame' a suspect by manipulating a photo for a photo array to produce a false identification from an eyewitness constitutes a violation of the due process rights secured by the Fourteenth Amendment." Id.

Nowhere does the court endorse a right to be free from unduly suggestive identification procedures actionable under § 1983 independent of the exclusionary rule. Legenzoff cites no other authority in support of his argument that such a substantive due process right exists. Thus, because the right does not exist, it precludes the Court's inquiry regarding whether it is clearly established. See United States ex rel. Kirby v. Sturges, 510 F.2d 397, 406 (7th Cir. 1975) (holding that there is no such Due Process violation resulting from unduly suggestive identification procedures until it is used against a defendant in a criminal trial); Gregory v. City of Louisville, 444 F.3d 725, 747 (6th Cir. 2006) (noting that "[i]t is true that an unduly suggestive identification does not, in and of itself, violate constitutional rights" and "the *prosecution's use of the identification at trial is a necessary intervening act for injury to occur and liability for any party to attach*") (emphasis added); Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000) ("In the context of unduly suggestive arrays, only a violation of the core right – the right to a fair trial – is actionable under § 1983."). Having concluded the right

to be free from unduly suggestive identification procedures is not a substantive due process right, the Court need not address whether Closurdo's photo array was unconstitutional for purposes of Legenzoff's § 1983 claim.

### C. Qualified Immunity

Regardless of whether Legenzoff can show a constitutional violation, Closurdo is entitled to qualified immunity. Qualified immunity protects law enforcement officials who "'reasonably but mistakenly conclude that probable cause is present.'" Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The record clearly demonstrates that Closurdo acted as a reasonable officer during his investigation of Legenzoff and believed his actions to be lawful in light of the totality of the circumstances. See Anderson v. Creighton, 483 U.S. 635, 641 (1987).

### IV. CONCLUSION

Accordingly, Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                    s/Marianne O. Battani
                                    MARIANNE O. BATTANI
                                    UNITED STATES DISTRICT JUDGE

DATE:  March 27, 2013

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing Sytem.

                                    s/Bernadette M. Thebolt
                                    Case Manager