UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LEGENZOFF,

        Plaintiff,

v.

MICHAEL STECKEL, et al.,

        Defendants.
_____/

CASE NO. 2:11-cv-11405

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS MICHAEL STECKEL, MICHAEL WELLS, AND CHARTER TOWNSHIP OF CANTON'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Michael Steckel, Michael Wells, and Charter Township of Canton's Motion for Summary Judgment. (Doc. 60). On April 4, 2011, Plaintiff James Legenzoff filed a complaint against six municipalities and seven individual police officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause. The complaint also sought § 1983 damages against the municipalities based on their unconstitutional practice, policy, or custom of inadequate training and/or supervision of the officers under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Legenzoff abandoned his Monell claims. (Doc. 71 at 1). For the reasons stated below, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants Michael Steckel, Michael Wells, and Charter Township of Canton's motion.

    I.    STATEMENT OF FACTS

        A.    Background

This case arises out of the misidentification of Plaintiff James Legenzoff as the "Suave Senior," an elderly man allegedly responsible for numerous thefts around the Detroit area. The thefts had the same *modus operandi* and began in the summer of 2007 in Warren, Michigan. Witnesses described the suspect as a white male in his seventies with white hair, about 5'10" and weighing 170 pounds. (Doc. 1 at 6). The suspect allegedly knocked on the victim's door and identified himself as a neighbor. (Id. at 7). He then invited himself in for coffee, and after excusing himself to use the bathroom, stole money or personal items from the house.

On August 29, 2007, Warren police questioned Legenzoff at a truck dealership. They obtained his driver's license photograph and presented it to witnesses who were unable to identify him as the perpetrator. This photograph aired on the news. When similar larcenies occurred in St. Clair Shores, Warren police shared Legenzoff's photograph and information with St. Clair Shores police. This information eventually made its way to Canton Township, Redford Township, Fraser, Roseville, and Harper Woods.

### B.   Canton Woods Complaint – Lyle and Victoria Whipple

In August of 2008, the Canton Township Police Department received a larceny complaint from Lyle and Victoria Whipple. (Doc. 71 at 9). After meeting a man named George in the parking lot of Kroger, George appeared at the Whipple residence and stole about $250. At the time of the incident, only Lyle was home. The Whipples described George as a heavyset white male, 5'10" with gray hair. (Id. at Ex. 22).

After learning of the incident, Detective Michael Wells showed Lyle a black and white photo array containing Legenzoff's picture, but he could not identify the suspect.

2

The next day, Wells showed the same photo array to Victoria who identified Legenzoff. Lyle then also identified Legenzoff after a second look, stating that he was 80% sure. Canton police sought a warrant for Legenzoff's arrest, but it was denied.

### C.   Canton Woods Complaint – Robert and Marie Temple

In September of 2008, Canton police received another complaint from Robert and Marie Temple. The police report indicated that a white male, 5'7" weighing 170 pounds knocked on their door and asked for "Bob." The man identified himself as Chester Morton, and entered the residence. After some discussion, Chester excused himself to go to the bathroom. After he left, the Temples noticed money missing from their bedroom. They described the man as clean cut and nicely dressed. (Id. at Ex. 23).

Upon receiving the complaint, Detective Michael Steckel requested information from local police departments through the Law Enforcement Information Network ("LEIN"). In response, Detective David Centala from the St. Clair Shores police department made a phone call to Steckel. Centala informed him that they had similar crimes reported in their area and that they had a suspect, Legenzoff. (Doc. 71, Ex. 20, p. 106-08).

### D.   Warrant and Arrest

On September 23 and 24, Wells showed a photo array to the Temples generated randomly by the CLEMIS picture-link system. It contained Legenzoff's drivers' license photo, which had a blue background. Notably, the other five photos contained gray backgrounds. Both Temples identified Legenzoff separately. Steckel and Wells applied for another warrant to arrest Legenzoff. The warrant report for the Whipple larceny

states that the photo array was administered separately to Lyle and Victoria. (Doc. 71, Ex. 26). However, this warrant request was denied. The Temple warrant report did not mention that the photo array was in color or the disparity in photo backgrounds. (Id.) Based on the report of the Temples, a warrant was issued, and Legenzoff was arrested on October 14, 2008.

Prior to the preliminary exam for the Temple larceny, Legenzoff's attorney offered to provide an alibi to Steckel and Wells, but was refused. Robert Temple testified at the preliminary exam that the photos were shown to him and his wife separately. (Id. at Ex. 25, p. 44). He also testified that he had not yet seen Legenzoff's photo on the news, and that the color array was shown to him before the black and white array. Legenzoff turned himself in for the Whipple larceny, but Lyle was unable to identify Legenzoff in court, and the charges were dismissed. The arrests garnered media attention from several news stations that broadcasted Legenzoff's name and photo throughout the area.

### E. The Complaint

On April 4, 2011, Legenzoff filed a 42 U.S.C. § 1983 complaint against the municipalities and individual officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments.

### II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

**III.     ANALYSIS**

Legenzoff's claims are dependent upon whether sufficient probable cause existed to request a warrant. See Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (reversing district court's denial of qualified immunity because defendants had probable cause to arrest plaintiff). He argues questions of fact exist regarding the validity of the

identification procedures along with the constitutionality of the steps taken, or lack thereof, to determine probable cause.  Specifically, he asserts the warrant request omitted exculpatory evidence and the inconsistencies in the statements of witnesses. Steckel and Wells assert they are entitled to qualified immunity, which also turns on the sufficiency of probable cause.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005) (quoting United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993)).  To determine whether probable cause exists, the court must examine the totality of the circumstances and whether the facts and circumstances known to the officer were "sufficient to warrant a prudent person" to believe that the individual committed the offense.  Hinchman v. Moore, 312 F.3d 198, 205-06 (6th Cir. 2002).

A claim of unlawful arrest "requires a plaintiff to prove that the arresting officer lacked probable cause." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005).  In order to prevail on a claim of malicious prosecution under § 1983, the plaintiff must show four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." [citations omitted].  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. [citations omitted].  Third, the plaintiff must show that, "as a consequence of a legal proceeding, "the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. [citations omitted].  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. [citation omitted].

Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010).

6

Public officials engaged in the performance of discretionary functions are entitled to qualified immunity from civil liability to the extent "their conduct does not violate clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An official who violates a clearly established right may not rely on the defense of qualified immunity. See Camreta v. Greene, 131 S.Ct. 2020, 2030-31 (2011). Thus, in order to overcome such a defense, a plaintiff must demonstrate that a constitutional violation has occurred and that the right was clearly established at the time it was violated. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Legenzoff sets forth two theories in order to demonstrate a constitutional violation: (1) Steckel and Wells acted without probable cause in seeking the warrants and (2) Steckel and Wells created unduly suggestive photo arrays in order to secure a false identification. Regarding the photo array, Legenzoff asserts it was unduly suggestive because Legenzoff's photo contained a blue background.

### A.    Probable Cause

The right to be free from arrest without probable cause is an actual constitutional right clearly established under the Fourth Amendment. See Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000). Therefore, Legenzoff must demonstrate Steckel and Wells did not have sufficient probable cause when they requested the warrant. In support of his argument of insufficient probable cause, Legenzoff identifies numerous errors: (1) there is a question of fact regarding whether the Temples picked Legenzoff out of a color or black and white photo array, (2) the color array was suggestive based on the blue background, tainting the officers' probable cause, (3) the black and white

7

array was suggestive based on the dress of all subjects, tainting probable cause, (4) the disparities in physical descriptions of the witnesses negates probable cause, and (5) the witnesses were shown the arrays together and provided post-identification feedback.

Numerous courts have held that photo arrays containing the defendant's picture with a different background are not suggestive. Unpublished authority from the Eleventh Circuit states that photo arrays with differing backgrounds and complexions of the suspects are not impermissibly suggestive. See United States v. Gay, 423 F. App'x. 873, 877 (11th Cir. 2011); United States v. Knight, 382 F. App'x. 905, 907 (11th Cir. 2010). The Ninth Circuit has also held that a different background is insufficient for an array to be impermissibly suggestive. See United States v. Burdeau, 168 F.3d 352, 357 (9th Cir. 1999). Other district courts have adopted similar holdings. See United States v. Gonzalez, 2011 WL 766580 *3 (E.D.N.Y. 2011) (photo array not suggestive where defendant's picture had the only blue background and defendant was only person wearing orange prison shirt); In re Rodriguez Ortiz, 444 F. Supp. 2d 876, 890-91 (N.D. Ill. 2006) (photo array not unduly suggestive where defendant's photo was the only one in color and the rest were in black and white).

Perhaps most analogous to the case at hand, the First Circuit held that a photo array was not impermissibly suggestive where defendant's photo had a darker background than some of the other photos, defendant had a different hairstyle and clothing from other suspects, and defendant's photo was from a state-issued identification card as opposed to the booking photos of others in the lineup. See United States v. Brennick, 405 F.3d 96, 99-100 (1st Cir. 2005). However, Brennick is distinguishable in that the officers presented a black and white version of the lineup to

the witness. Id. at 99. In addition, the court found the array was consistent with the descriptions of the witnesses. Id. at 100.

It should be noted that none of the above cited cases are mandatory authority. Moreover, the array in this case is distinguishable from the above cited cases because it not only contained a different background for Legenzoff from that of the others, but also different hair and clothing. None of the other photos contained men with white hair, a key piece of the description offered by the victims. In contrast to Brennick, the photo array was generally inconsistent with witness descriptions that the suspect was nicely dressed. (Doc. 71 at Ex. 23). The array contained a photo of one man without a shirt, one wearing a sweatshirt, one wearing a t-shirt, and another wearing a sleeveless shirt. (Id. at Ex. 24). Combined, these discrepancies render the photo array unduly suggestive.

Importantly, both Defendants admitted it would be suggestive for an officer to show a witness the color array before the black and white array. See (Id. at Ex. 20, p. 42; Ex. 21 p. 69-70). Defendants testified that they did not show the Temples the color array first, but the Temples testified to the contrary. See (Doc. 71 Ex. 25, p. 52). Because the color array was flawed and suggestive, if it was shown first, it tainted the identifications, which were essential to establishing probable cause. As there is a genuine dispute of material fact regarding which array was first administered to the Temples, summary judgment for the officers on the issue of qualified immunity is denied. See Hale v. Kart, 396 F.3d 721, 725 (6th Cir. 2005) ("[i]f disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts").

### B.     Unduly Suggestive Identification Procedures

It is undisputed that Steckel and Wells are public officers and conducting a photo array falls within their discretionary authority as detectives.  Therefore, it falls upon Legenzoff to demonstrate they violated a clearly established "constitutional right of which a reasonable person in the official's position would have known."  Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).  In determining the issue of qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether the right was clearly established at the time of the alleged violation."  Conn v. Gabbert, 526 U.S. 286, 290 (1999).

Here, Legenzoff failed to allege a deprivation of an actual constitutional right regarding his claim that the right to be free from unduly suggestive identification procedures is an independently actionable right under § 1983.  Legenzoff argues such a right exists and it is clearly established that "the manipulation of a photo line-up to produce a false identification from an eyewitness constitutes a violation of due process rights secured by the Fourteenth Amendment, which is actionable under 42 U.S.C. § 1983."  (Doc. 58 at 10).  Although Legenzoff relies upon Manson v. Brathwaite, 432 U.S. 98 (1977) and Good v. Curtis, 601 F.3d 393 (5th Cir. 2010) for support, his reliance is misplaced.  In Brathwaite, the Supreme Court held that witness identifications resulting from unduly suggestive identification procedures must be excluded from evidence, not that an independently actionable constitutional right to be free from such procedures exists.

10

In Good, the officer intentionally framed the defendant by manipulating his photo to resemble the victim's description. Id. at 396. The officer told the defendant that he was going to "fix" the photo by altering the lighting to make it match the "dark tan" skin described by the victim. Id. The defendant was identified in a live array and then convicted, but exonerated by DNA evidence nearly 20 years later. Id. at 397. More importantly, in determining the conduct of the officer was a violation of due process under the Fourteenth Amendment, the court in Good stated:

> The reason for the misidentification, we must assume at this summary judgment juncture, was [the officer's] concerted efforts to manipulate the photo. The Supreme Court's "suggestive array" suppression test announced in Manson v. Brathwaite, 432 U.S. 98 (1977), *is not designed for and does not apply in the context of a § 1983 suit following a DNA exoneration for a conviction derived from police conduct intentionally designed to procure a false identification by unlawful means.*

601 F.3d at 398 (emphasis added). It is clear the court did not rely on the unduly suggestive identification procedure in its conclusion. Instead, the court found the "concerted effort on the part of a police officer to 'frame' a suspect by manipulating a photo for a photo array to produce a false identification from an eyewitness constitutes a violation of the due process rights secured by the Fourteenth Amendment." Id.

Nowhere does the court endorse a right to be free from unduly suggestive identification procedures actionable under § 1983 independent of the exclusionary rule. In addition, the Sixth Circuit has held no such right exists. See Hutsell v. Sayre, 5 F.3d 996, 1005 (6th Cir. 1993) ("'the procedural safeguards established in Brathwaite and Stovall protect only against the admission of unreliable evidence at trial and does [sic] not establish a constitutional right to be free of suggestive lineups . . . . The rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule

11

designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and the prophylactic rule that should be actionable under § 1983.'") (citing Hensley v. Carey, 818 F.2d 646, 648-49 (7th Cir. 1987)).

Legenzoff cites no other authority in support of his argument that such a substantive due process right exists. Thus, because the right does not exist, it precludes the Court's inquiry regarding whether it is clearly established. See United States ex rel. Kirby v. Sturges, 510 F.2d 397, 406 (7th Cir. 1975) (holding that there is no such Due Process violation resulting from unduly suggestive identification procedures until it is used against a defendant in a criminal trial); Gregory v. City of Louisville, 444 F.3d 725, 747 (6th Cir. 2006) (noting that "[i]t is true that an unduly suggestive identification does not, in and of itself, violate constitutional rights" and "*the prosecution's use of the identification at trial is a necessary intervening act for injury to occur and liability for any party to attach*") (emphasis added); Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000) ("In the context of unduly suggestive arrays, only a violation of the core right – the right to a fair trial – is actionable under § 1983."). Having concluded the right to be free from unduly suggestive identification procedures is not a substantive due process right, the Court declines to address whether the photo arrays were unconstitutional for purposes of Legenzoff's § 1983 claim. Therefore, summary judgment is appropriate.

### IV. CONCLUSION

Accordingly, Defendants' motion for summary judgment is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS SO ORDERED.**

          s/Marianne O. Battani
          MARIANNE O. BATTANI
          UNITED STATES DISTRICT JUDGE

DATE: March 27, 2013

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

          s/Bernadette M. Thebolt

          Case Manager