UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LEGENZOFF,

        Plaintiff,

v.                                                                            CASE NO. 2:11-cv-11405

MICHAEL STECKEL, et al.,                                HON. MARIANNE O. BATTANI

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS SUSAN BOWLIN
AND CITY OF FRASER'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Susan Bowlin and City of Fraser's Motion for Summary Judgment. (Doc. 67). On April 4, 2011, Plaintiff James Legenzoff filed a complaint against six municipalities and seven individual police officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause. The complaint also sought § 1983 damages against the municipalities based on their unconstitutional practice, policy, or custom of inadequate training and/or supervision of the officers under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Legenzoff abandoned his Monell claims. (Doc. 71 at 1). For the reasons stated below, the Court **GRANTS** Defendants Susan Bowlin and City of Fraser's motion.

    **I.**    **STATEMENT OF FACTS**

        **A.**    **Background**

This case arises out of the misidentification of Plaintiff James Legenzoff as the "Suave Senior," an elderly man allegedly responsible for numerous thefts around the

Detroit area. The thefts had the same *modus operandi* and began in the summer of 2007 in Warren, Michigan. Witnesses described the suspect as a white male in his seventies with white hair, about 5'10" and weighing 170 pounds. (Doc. 1 at 6). The suspect allegedly knocked on the victim's door and identified himself as a neighbor. (Id. at 7). He then invited himself in for coffee, and after excusing himself to use the bathroom, stole money or personal items from the house. (Id.)

On August 29, 2007, Warren police questioned Legenzoff at a truck dealership. (Id.) They obtained his driver's license photograph and presented it to witnesses who were unable to identify him as the perpetrator. (Id.) This photograph aired on the news. (Id.) When similar larcenies occurred in St. Clair Shores, Warren police shared Legenzoff's photograph and information with St. Clair Shores police. This information eventually made its way to Canton Township, Redford Township, Fraser, Roseville, and Harper Woods.

### B. Fraser Email

On December 18, 2008, Fraser police received report of a theft from Concetta Miramonti. (Doc. 67 at 1). Officer Paul Baranski was dispatched to the residence to investigate. Ms. Miramonti reported that a white male age 70, 5'4' weighing 150 pounds with brownish hair had previously approached her at a market and asked for her phone number. Unexpectedly, the man later came to her home and she invited him in for coffee. This occurred several times. Each time, the man had excused himself to use the restroom repeatedly during the visit. After the last visit, Ms. Miramonti noticed a large sum of money missing from her dresser drawer.

On December 30, 2008, Fraser Detective Susan Bowlin, otherwise unaware of the Miramonti complaint, received a phone call from Detective Sergeant Keith Waller of the Roseville Police Department. (Id. at 2). Waller informed Bowlin that similar crimes with the same *modus operandi* had occurred in other towns, and that Canton police had arrested Legenzoff for those crimes. He also noted that the daughter of Miramonti, Phyllis Purcell, had sent out an email to several police departments in the area with the story of her mother. The email also contained an article from McComb Daily newspaper with details about the crimes that had occurred. Bowlin then studied the Miramonti complaint and searched the CLEMIS system for photographs of Legenzoff. She located four arrest photographs from other jurisdictions. Bowlin also received a copy of Purcell's email.

Next, Bowlin contacted Sergeant David Centala of St. Clair Shores police who informed her that Legenzoff was identified by officers after they observed him leaving the home of an alleged victim in Warren. (Doc. 71, Ex. 36, p. 69). She confirmed this information with Warren Detective Mark Christian. Bowlin then contacted Purcell to notify her that another locale had arrested the person suspected of the crimes. She also asked if Ms. Miramonti would view a photo array to identify a suspect.

Bowlin created a photo array using the CLEMIS system which contained Legenzoff's photo. Before the array was administered to Ms. Miramonti, Bowlin informed her that she didn't want a guess and that "if the person is not in this array, that's okay." (Id. at p. 83). After about a minute, Ms. Miramonti identified Legenzoff. Bowlin then notified her that he was the man arrested for similar crimes in other municipalities.

### C. The Warrant and Arrest

Based on the identification, Bowlin submitted a warrant request. (Id. at Ex. 40). This included her report, witness statements, the email from Purcell, the McComb Daily article, and the photo array. After the warrant was issued in January 2009, Legenzoff was arrested. However, the charges were dropped for various reasons.

### D. The Complaint

On April 4, 2011, Legenzoff filed a 42 U.S.C. § 1983 complaint against the municipalities and individual officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec.

4

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

### III. ANALYSIS

Legenzoff's claims are dependent upon whether sufficient probable cause existed to request a warrant. See Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (reversing district court's denial of qualified immunity because defendants had probable cause to arrest plaintiff). He argues questions of fact exist regarding the validity of the identification procedures along with the constitutionality of the steps taken, or lack thereof, to determine probable cause. Bowlin raised the defense of qualified immunity, which also turns on the sufficiency of probable cause.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005) (quoting United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993)). To determine whether probable cause exists, the court must examine the totality of the circumstances and whether the facts and circumstances known to the

officer were "sufficient to warrant a prudent person" to believe that the individual committed the offense. Hinchman v. Moore, 312 F.3d 198, 205-06 (6th Cir. 2002).

A claim of unlawful arrest "requires a plaintiff to prove that the arresting officer lacked probable cause." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). In order to prevail on a claim of malicious prosecution under § 1983, the plaintiff must show four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." [citations omitted]. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. [citations omitted]. Third, the plaintiff must show that, "as a consequence of a legal proceeding, "the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. [citations omitted]. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. [citation omitted].

Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010).

Public officials engaged in the performance of discretionary functions are entitled to qualified immunity from civil liability to the extent "their conduct does not violate clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An official who violates a clearly established right may not rely on the defense of qualified immunity. See Camreta v. Greene, 131 S.Ct. 2020, 2030-31 (2011). Thus, in order to overcome such a defense, a plaintiff must demonstrate that a constitutional violation has occurred and that the right was clearly established at the time it was violated. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Legenzoff sets forth two theories in order to demonstrate a constitutional violation: (1) Bowlin acted without probable cause in seeking a warrant and (2) Bowlin created an unduly suggestive photo array in order to secure a false identification. Regarding the photo array, Legenzoff asserts it was unduly suggestive because it was in black and white.

### A.     Probable Cause

The right to be free from warrantless arrest without probable cause is an actual constitutional right clearly established under the Fourth Amendment. See Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000). Therefore, Legenzoff must demonstrate that Bowlin did not have sufficient probable cause when she requested the warrant. In support of his argument of insufficient probable cause, Legenzoff identifies numerous errors: (1) Ms. Miramonti knew who the suspect was before the photo array, (2) the array was in black and white, which necessarily did not match Ms. Miramonti's description of the suspect's brownish hair, and (3) Bowlin provided post identification feedback to Ms. Miramonti after she identified Legenzoff. Legenzoff asserts Bowlin's knowledge of these combined errors negates probable cause.

Legenzoff's contention that because Bowlin spoke with Purcell before the array, Ms. Miramonti "(1) knew who the suspect was; (2) knew that he had been arrested by another police department; (3) and knew that the purpose of the lineup procedure was 'to ID the suspect that had come into her home'" is misplaced. (Doc. 71 at 62). Bowlin did not tell Purcell or Ms. Miramonti the name of the suspect or his description. Likewise, the McComb Daily article did not provide Legenzoff's name. Ms. Miramonti understood that Bowlin was going to show her an array that may or may not include the

7

man she encountered.  See (Id. at Ex. 36, p. 83).  Thus, there is no evidence Ms. Miramonti's identification was tainted in any fashion detrimental to probable cause.

In addition, the fact that the photo array did not completely conform to the description provided by Ms. Miramonti is of no import.  Legenzoff asserts the photo array was misleading because Ms. Miramonti described the suspect as having "brownish" hair, but the photo array pictures were black and white.  However, Bowlin's comment to Ms. Miramonti that "if the person is not in this array, that's okay" undermines Legenzoff's claim.  Ms. Miramonti understood that the person may not be among those pictured.  Without examining Legenzoff's actual hair color, the Court finds no error in using the black and white photo array.  Such is common practice, and there is no authority to the contrary.  See Velazquez v. Poole, 614 F. Supp. 2d 284, 301 (E.D.N.Y. 2007) ("Case law has developed no requirement, however, that photos in an array present only individuals who match petitioner's appearance in every detail.").  In addition, the use of the black and white array did not create a substantial likelihood of identification.  Manson v. Brathwaite, 432 U.S. 98, 109-14 (1977); see also Mikel v. Thieret, 887 f.2d 733, 738 (7th Cir. 1989).  Certainly, the suspect's hair color was not the only factor upon which Ms. Miramonti based her identification.  She met with the suspect several times for at least forty-five minutes, giving her ample time to remember the facial characteristics of the man she encountered.  Eyewitness statements are presumptively reliable.  See Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999).  Thus, Bowlin was entitled to rely upon the identification regardless of whether the photos were in color or black and white.

8

Last, Legenzoff contends Bowlin did not have probable cause because Ms. Miramonti received post identification feedback after her identification. There is no authority that prohibits officers from providing post identification feedback to witnesses and Legenzoff cites none. In addition, there is nothing to suggest that anything Bowlin said to Ms. Miramonti retroactively affected her decision. The expert report relied upon by Legenzoff is not entitled to any controlling weight.

Consequently, viewed from the totality of the circumstances, it is clear Bowlin had probable cause based on her reasonable belief that Legenzoff was the perpetrator. The crimes carried a similar *modus operandi* and any doubts would have been dispelled by confirmations that Legenzoff was arrested from Detectives Waller and Centala. Bowlin acted as a reasonable officer under the circumstances, and a reasonable jury could not find a lack of probable cause to support the warrant request.

## B.    Unduly Suggestive Identification Procedures

It is undisputed that Bowlin is a public officer and conducting a photo array falls within her discretionary authority as a detective. Therefore, it falls upon Legenzoff to demonstrate Bowlin violated a clearly established "constitutional right of which a reasonable person in the official's position would have known." Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006). In determining the issue of qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether the right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999).

Legenzoff failed to allege a deprivation of an actual constitutional right regarding his claim that the right to be free from unduly suggestive identification procedures is an independently actionable right under § 1983. Legenzoff argues such a right exists and it is clearly established that "the manipulation of a photo line-up to produce a false identification from an eyewitness constitutes a violation of due process rights secured by the Fourteenth Amendment, which is actionable under 42 U.S.C. § 1983." (Doc. 58 at 10). Although Legenzoff relies upon Manson v. Brathwaite, 432 U.S. 98 (1977) and Good v. Curtis, 601 F.3d 393 (5th Cir. 2010) for support, his reliance is misplaced. In Brathwaite, the Supreme Court held that witness identifications resulting from unduly suggestive identification procedures must be excluded from evidence, not that an independently actionable constitutional right to be free from such procedures exists.

In Good, the officer intentionally framed the defendant by manipulating his photo to resemble the victim's description. Id. at 396. The officer told the defendant that he was going to "fix" the photo by altering the lighting to make it match the "dark tan" skin described by the victim. Id. The defendant was identified in a live array and then convicted, but exonerated by DNA evidence nearly 20 years later. Id. at 397. More importantly, in determining the conduct of the officer was a violation of due process under the Fourteenth Amendment, the court in Good stated:

> The reason for the misidentification, we must assume at this summary judgment juncture, was [the officer's] concerted efforts to manipulate the photo. The Supreme Court's "suggestive array" suppression test announced in Manson v. Brathwaite, 432 U.S. 98 (1977), *is not designed for and does not apply in the context of a § 1983 suit following a DNA exoneration for a conviction derived from police conduct intentionally designed to procure a false identification by unlawful means.*

601 F.3d at 398 (emphasis added). It is clear the court did not rely on the unduly suggestive identification procedure in its conclusion. Instead, the court found the "concerted effort on the part of a police officer to 'frame' a suspect by manipulating a photo for a photo array to produce a false identification from an eyewitness constitutes a violation of the due process rights secured by the Fourteenth Amendment." Id.

Nowhere does the court endorse a right to be free from unduly suggestive identification procedures actionable under § 1983 independent of the exclusionary rule. Legenzoff cites no other authority in support of his argument that such a substantive due process right exists. Thus, because the right does not exist, it precludes the Court's inquiry regarding whether it is clearly established. See United States ex rel. Kirby v. Sturges, 510 F.2d 397, 406 (7th Cir. 1975) (holding that there is no such Due Process violation resulting from unduly suggestive identification procedures until it is used against a defendant in a criminal trial); Gregory v. City of Louisville, 444 F.3d 725, 747 (6th Cir. 2006) (noting that "[i]t is true that an unduly suggestive identification does not, in and of itself, violate constitutional rights" and "the *prosecution's use of the identification at trial is a necessary intervening act for injury to occur and liability for any party to attach*") (emphasis added); Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000) ("In the context of unduly suggestive arrays, only a violation of the core right – the right to a fair trial – is actionable under § 1983."). Having concluded the right to be free from unduly suggestive identification procedures is not a substantive due process right, the Court need not address whether Bowlin's photo array was unconstitutional for purposes of Legenzoff's § 1983 claim.

### C. Qualified Immunity

Regardless of whether Legenzoff can show a constitutional violation, Bowlin is entitled to qualified immunity. Qualified immunity protects law enforcement officials who "'reasonably but mistakenly conclude that probable cause is present.'" Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The record clearly demonstrates that Bowlin acted as a reasonable officer during her investigation of Legenzoff and believed her actions to be lawful in light of the totality of the circumstances. See Anderson v. Creighton, 483 U.S. 635, 641 (1987).

## IV. CONCLUSION

Accordingly, Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

DATE: March 27, 2013

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

                                        s/Bernadette M. Thebolt
                                        Case Manager