UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LEGENZOFF,

        Plaintiff,

v.                                                                                  CASE NO. 2:11-cv-11405

MICHAEL STECKEL, et al.,                                    HON. MARIANNE O. BATTANI

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS KEVIN CRITTENDEN AND CHARTER TOWNSHIP OF REDFORD'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Kevin Crittenden and Charter Township of Redford's Motion for Summary Judgment. (Doc. 63). On April 4, 2011, Plaintiff James Legenzoff filed a complaint against six municipalities and seven individual police officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause. The complaint also sought § 1983 damages against the municipalities based on their unconstitutional practice, policy, or custom of inadequate training and/or supervision of the officers under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Legenzoff abandoned his Monell claims. (Doc. 71 at 1). For the reasons stated below, the Court **GRANTS** Defendants Kevin Crittenden and Charter Township of Redford's motion.

    **I.**    **STATEMENT OF FACTS**

        **A.**    **Background**

This case arises out of the misidentification of Plaintiff James Legenzoff as the "Suave Senior," an elderly man allegedly responsible for numerous thefts around the

Detroit area. The thefts had the same *modus operandi* and began in the summer of 2007 in Warren, Michigan. Witnesses described the suspect as a white male in his seventies with white hair, about 5'10" and weighing 170 pounds. (Doc. 1 at 6). The suspect allegedly knocked on the victim's door and identified himself as a neighbor. (Id. at 7). He then invited himself in for coffee, and after excusing himself to use the bathroom, stole money or personal items from the house. (Id.)

On August 29, 2007, Warren police questioned Legenzoff at a truck dealership. (Id.) They obtained his driver's license photograph and presented it to witnesses who were unable to identify him as the perpetrator. (Id.) This photograph aired on the news. (Id.) When similar larcenies occurred in St. Clair Shores, Warren police shared Legenzoff's photograph and information with St. Clair Shores police. This information eventually made its way to Canton Township, Redford Township, Fraser, Roseville, and Harper Woods.

### B. Redford Incident

On June 27, 2008, Darlene Teubert reported a larceny to Redford police. (Doc. 63 at 1). Darlene stated that an elderly white male approached the side door of her house asking for Warren, Darlene's husband. (Doc. 71, Ex. 33). The man identified himself as "Walter," claiming to have met Warren while walking around the neighborhood. Darlene let Walter in the house and got him a glass of water. Walter then asked to use the bathroom. After he finished, he mentioned that he was going to retrieve a flower pot for Darlene and would be right back. At some point, Walter took $155 from the master bedroom and never returned. Sergeant Crittenden was assigned

to the case. (Doc. 63 at 1). However, because of insufficient leads, the case was closed in August of 2008.

In October 2008, Darlene viewed a news report detailing the arrest of Legenzoff in connection with the Canton larcenies. Legenzoff's photo appeared in the report. Darlene then telephoned Canton Detective Michael Steckel to identify Legenzoff as the man she encountered in June. After speaking with Darlene, Steckel provided Crittenden his report detailing the similar *modus operandi* of the crimes. Crittenden then spoke with Darlene where she again reiterated Legenzoff's involvement. Darlene recalled the items stolen from her residence: cash and the silver money clip belonging to her husband with the initials GDBA. On October 20, 2008, a search warrant was issued for Legenzoff's house, but police recovered nothing.

### C. The Warrant and Arrest

After Crittenden completed his investigative report, he submitted it in furtherance of an arrest warrant. The warrant report stated that Darlene identified Legenzoff from the news report. It also described the encounter between Darlene and the man known as "Walter" along with Crittenden's contact with Steckel. After a felony complaint was issued, Legenzoff turned himself in, but the charges were dropped prior to trial.

### D. The Complaint

On April 4, 2011, Legenzoff filed a 42 U.S.C. § 1983 complaint against the municipalities and individual officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments.

3

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

4

**III.    ANALYSIS**

Legenzoff's claims are dependent upon whether sufficient probable cause existed to request a warrant. See Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (reversing district court's denial of qualified immunity because defendants had probable cause to arrest plaintiff). He argues questions of fact exist regarding the validity of the identification procedures along with the constitutionality of the steps taken, or lack thereof, to determine probable cause. Crittenden raised the defense of qualified immunity, which also turns on the sufficiency of probable cause.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005) (quoting United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993)). To determine whether probable cause exists, the court must examine the totality of the circumstances and whether the facts and circumstances known to the officer were "sufficient to warrant a prudent person" to believe that the individual committed the offense. Hinchman v. Moore, 312 F.3d 198, 205-06 (6th Cir. 2002).

A claim of unlawful arrest "requires a plaintiff to prove that the arresting officer lacked probable cause." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). In order to prevail on a claim of malicious prosecution under § 1983, the plaintiff must show four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." [citations omitted]. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. [citations omitted]. Third, the plaintiff must show that, "as a consequence of a legal proceeding, "the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment

5

jurisprudence, apart from the initial seizure. [citations omitted]. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. [citation omitted].

Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010).

Public officials engaged in the performance of discretionary functions are entitled to qualified immunity from civil liability to the extent "their conduct does not violate clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An official who violates a clearly established right may not rely on the defense of qualified immunity. See Camreta v. Greene, 131 S.Ct. 2020, 2030-31 (2011). Thus, in order to overcome such a defense, a plaintiff must demonstrate that a constitutional violation has occurred and that the right was clearly established at the time it was violated. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Legenzoff sets forth two theories in order to demonstrate a constitutional violation: (1) Crittenden's reliance on the news report identification of Legenzoff was unduly suggestive and (2) Crittenden acted without probable cause in seeking a warrant. At the outset, the Court rejects Legenzoff's first theory because Crittenden did not administer any identification procedure to Darlene. Darlene relied on a news report, not any identification technique used by the police. Thus, it cannot be argued that Crittenden used or created any unduly suggestive procedures to obtain the identification.

### A. Probable Cause

The right to be free from warrantless arrest without probable cause is an actual constitutional right clearly established under the Fourth Amendment. See Gardenhire v.

Schubert, 205 F.3d 303, 313 (6th Cir. 2000). Therefore, Legenzoff must demonstrate Crittenden did not have sufficient probable cause when he requested the warrant. In support of his argument of insufficient probable cause, Legenzoff identifies numerous errors: (1) the news report was the only basis for the warrant and was suggestive, (2) Crittenden did not watch the report, and (3) Crittenden did not ask Darlene for a description of the suspect.

Contrary to Legenzoff's argument, the fact that Darlene recognized him in the news does not negate probable cause. The question is whether, under the totality of the circumstances, the process used, even if unduly suggestive, created a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 109-14 (1977); see also Mikel v. Thieret, 887 f.2d 733, 738 (7th Cir. 1989) (holding that victim's identification of suspect in a photo array after seeing the suspect in the newspaper did not create a substantial likelihood of misidentification). However, as previously stated, Crittenden did not administer any identification procedure to Darlene. She recalled the similarity in behavior and appearance of the suspect to whom she allowed into her house. Darlene spent several minutes with the suspect, giving her ample time to view his facial features. "Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect." Phillips v. Allen, 743 F. Supp. 2d 931, 941 (N.D. Ill. 2010). Further, Crittenden corroborated the suspect's name through contacts with Canton police who believed Legenzoff was the perpetrator for crimes of a similar *modus operandi*. In addition, because "eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." Ahlers v. Schebil, 188

7

F.3d 365, 370 (6th Cir. 1999). Thus, there was no substantial likelihood of misidentification and Crittenden acted reasonably under the circumstances in relying on an eyewitness identification that he believed to be accurate.

Whether Crittenden actually viewed the news report is irrelevant because he reasonably believed Darlene to be a reliable witness. Upon speaking with Steckel from Canton, he learned that Legenzoff was their suspect and that his picture aired on the news. A reasonable officer is entitled to rely upon information from a fellow officer, and there is no evidence that Crittenden believed the news story to be misleading or false. Likewise, there is no evidence the news story tainted Darlene's identification in any way, and Crittenden did not need to watch the story after he corroborated its contents with the Canton police department.

Legenzoff's contention that Crittenden did not ask for a description of the suspect is also incorrect. In her statement, Darlene stated that the suspect was an elderly white male who identified himself as Walter. (Doc. 71, Ex. 33). In addition, she provided great detail of the encounter along with the property stolen. The mere fact that she did not provide a description of height and weight does not suggest Crittenden conducted an incomplete interview. Witnesses do not always recount every detail of their observations. As viewed from the totality of the circumstances, the information Darlene provided was substantially similar to the nature of the crimes with which Legenzoff was charged: the suspect identified himself as a neighbor, he was an elderly white male, he asked for a cup of coffee or water, he excused himself to the bathroom, abruptly left, and then the victims noticed missing valuables. The description was sufficient and did not indicate to Crittenden that Darlene was an unreliable witness.

8

Based on the totality of the circumstances, Crittenden had probable cause to support his warrant request based on his reasonable belief that Legenzoff was the perpetrator. Any concern Crittenden had about Darlene's identification from the news report was dispelled when Crittenden spoke with Canton police and learned Legenzoff had been arrested for similar crimes. Crittenden acted as a reasonable officer under the circumstances, and a reasonable jury could not find a lack of probable cause to support his request for a warrant.

### B.     Qualified Immunity

Regardless of whether Legenzoff can show a constitutional violation, Crittenden is entitled to qualified immunity. Qualified immunity protects law enforcement officials who "'reasonably but mistakenly conclude that probable cause is present.'" Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The record clearly demonstrates that Crittenden acted as a reasonable officer during his investigation of Legenzoff and believed his actions to be lawful in light of the totality of the circumstances. See Anderson v. Creighton, 483 U.S. 635, 641 (1987).

### IV.    CONCLUSION

Accordingly, Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                                s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                UNITED STATES DISTRICT JUDGE

DATE:  March 27, 2013

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt<br>
Case Manager