**UNTIED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES LEGENZOFF,

        Plaintiff,

v.                                     CASE NO. 2:11-cv-11405

MICHAEL STECKEL, et al.,          HON. MARIANNE O. BATTANI

        Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS KEITH WALLER AND CITY OF ROSEVILLE'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Keith Waller and City of Roseville's Motion for Summary Judgment. (Doc. 64). On April 4, 2011, Plaintiff James Legenzoff filed a complaint against six municipalities and seven individual police officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause. The complaint also sought § 1983 damages against the municipalities based on their unconstitutional practice, policy, or custom of inadequate training and/or supervision of the officers under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Legenzoff abandoned his Monell claims. (Doc. 71 at 1). For the reasons stated below, the Court **GRANTS** Defendants Keith Waller and City of Roseville's motion.

### I.     STATEMENT OF FACTS

#### A.     Background

This case arises out of the misidentification of Plaintiff James Legenzoff as the "Suave Senior," an elderly man allegedly responsible for numerous thefts around the

Detroit area.  The thefts had the same *modus operandi* and began in the summer of 2007 in Warren, Michigan.  Witnesses described the suspect as a white male in his seventies with white hair, about 5'10" and weighing 170 pounds.  (Doc. 1 at 6).  The suspect allegedly knocked on the victim's door and identified himself as a neighbor.  (Id. at 7).  He then invited himself in for coffee, and after excusing himself to use the bathroom, stole money or personal items from the house.  (Id.)

On August 29, 2007, Warren police questioned Legenzoff at a truck dealership. (Id.)  They obtained his driver's license photograph and presented it to witnesses who were unable to identify him as the perpetrator.  (Id.)  This photograph aired on the news. (Id.)  When similar larcenies occurred in St. Clair Shores, Warren police shared Legenzoff's photograph and information with St. Clair Shores police.  This information eventually made its way to Canton Township, Redford Township, Fraser, Roseville, and Harper Woods.

### B.    Roseville Incident

On January 6, 2009, Roseville Detective Keith Waller received a telephone call from Connie Groth.  (Doc. 71, Ex. 43).  Connie told Waller that the man on the news (identified as James Legenzoff) had befriended her and stolen her wallet in 2005.  She then described her encounter in 2005 in which she invited the man in for coffee.  He asked to use the bathroom several times.  Connie's daughter also encountered him when she came to visit that day.  After the man left, Connie noticed her wallet was missing and filed a police report.

During the call, Connie also told Waller that her daughter had emailed her a photo of Legenzoff, which had appeared in the news story.  In reply to her daughter's

email, Connie wrote, "OMG, this is exactly what happened to me although I didn't know the guy was 73, he sure didn't look it." (Id. at 69). Waller noted in his report that "Connie relayed the story to me almost word for word from the police report written back in 2005." (Id. at Ex. 43). Connie then forwarded Legenzoff's photo to Waller.

At the time of the phone call, Waller had been in contact with Fraser Detective Bowlin regarding the involvement of Legenzoff in similar crimes. Waller was informed that Legenzoff had been arraigned in Redford, Canton, and St. Clair Shores on similar charges.

### C.     The Warrant and Arrest

On January 6, 2009, Waller submitted a request for an arrest warrant. (Doc. 64, Ex. A). The request described the details of the encounter in 2005 and noted that Connie had identified Legenzoff from the news story of his arrest in another jurisdiction; i.e., the story Connie's daughter emailed to her. Waller never administered a photo array to Connie or her daughter. The warrant was authorized. However, the charges were later dropped.

### D.     The Complaint

On April 4, 2011, Legenzoff filed a 42 U.S.C. § 1983 complaint against the municipalities and individual officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

3

Civ. P. 56(a).   The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The Court "must lend credence" to the non-moving party's interpretation of the disputed facts.  Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)).   The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

## III.   ANALYSIS

Legenzoff's claims are dependent upon whether sufficient probable cause existed to request a warrant.  See Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (reversing district court's denial of qualified immunity because defendants had probable

cause to arrest plaintiff).  He argues questions of fact exist regarding the validity of the identification procedures along with the constitutionality of the steps taken, or lack thereof, to determine probable cause.  Waller raised the defense of qualified immunity, which also turns on the sufficiency of probable cause.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion."  United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005) (quoting United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993)).  To determine whether probable cause exists, the court must examine the totality of the circumstances and whether the facts and circumstances known to the officer were "sufficient to warrant a prudent person" to believe that the individual committed the offense.  Hinchman v. Moore, 312 F.3d 198, 205-06 (6th Cir. 2002).

A claim of unlawful arrest "requires a plaintiff to prove that the arresting officer lacked probable cause."  Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005).  In order to prevail on a claim of malicious prosecution under § 1983, the plaintiff must show four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." [citations omitted].  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. [citations omitted].  Third, the plaintiff must show that, "as a consequence of a legal proceeding, "the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. [citations omitted].  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. [citation omitted].

Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010).

5

Public officials engaged in the performance of discretionary functions are entitled to qualified immunity from civil liability to the extent "their conduct does not violate clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An official who violates a clearly established right may not rely on the defense of qualified immunity. See Camreta v. Greene, 131 S.Ct. 2020, 2030-31 (2011). Thus, in order to overcome such a defense, a plaintiff must demonstrate that a constitutional violation has occurred and that the right was clearly established at the time it was violated. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Legenzoff sets forth two theories in order to demonstrate a constitutional violation: (1) Waller's reliance on the news report identification of Legenzoff was unduly suggestive and (2) Waller acted without probable cause in seeking a warrant. At the outset, the Court rejects Legenzoff's first theory because Waller did not administer any identification procedure to Connie. Connie relied on a news report, not any identification technique used by the police. Thus, it cannot be argued that Waller used or created any unduly suggestive procedures to obtain the identification.

### A.   Probable Cause

The right to be free from warrantless arrest without probable cause is an actual constitutional right clearly established under the Fourth Amendment. See Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000). Therefore, Legenzoff must demonstrate Waller did not have sufficient probable cause when he requested the warrant. In support of his argument of insufficient probable cause, Legenzoff identifies numerous errors: (1) Connie identified Legenzoff from a news report, (2) Waller never met with

6

Connie or conducted further investigation before requesting a warrant, and (3) Connie never provided a description of the person she encountered in 2005.

Contrary to Legenzoff's argument, the fact that Connie recognized him in the news does not negate probable cause.  The question is whether, under the totality of the circumstances, the process used, even if unduly suggestive, created a substantial likelihood of misidentification.  Manson v. Brathwaite, 432 U.S. 98, 109-14 (1977); see also Mikel v. Thieret, 887 f.2d 733, 738 (7th Cir. 1989) (holding that victim's identification of suspect in a photo array after seeing the suspect in the newspaper did not create a substantial likelihood of misidentification).  However, as previously stated, Waller did not administer any identification procedure to Connie or her daughter.  She recalled the similarity in behavior and appearance of the suspect to whom she allowed into her home.  Connie spent several minutes with the suspect, giving her ample time to view his facial features.  Waller also noted the consistency between her two reports; specifically, that no details changed.  "Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect."  Phillips v. Allen, 743 F. Supp. 2d 931, 941 (N.D. Ill. 2010).  Further, Waller corroborated the suspect's name through contacts with Canton, Redford, and St. Clair Shores police who believed Legenzoff was the perpetrator for crimes of a similar modus operandi.  In addition, because "eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity."  Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999).  Thus, there was no substantial likelihood of misidentification and Waller acted reasonably under the circumstances in relying on an eyewitness identification he believed to be accurate.  In

7

addition, there was no need to conduct any additional investigation because Waller had formed a reasonable belief that Legenzoff was the perpetrator based on information provided by other reliable police departments.  Similarly, the fact that Connie did not provide a description of the man she encountered does not negate probable cause.

Based on the totality of the circumstances, Waller had probable cause to support his warrant request based on his reasonable belief that Legenzoff was the perpetrator. Any concern Waller had about Connie's identification from the news report was dispelled when he spoke with Redford police and learned Legenzoff had been arrested for similar crimes.  Waller acted as a reasonable officer under the circumstances, and a reasonable jury could not find a lack of probable cause to support his warrant request.

### B.    Qualified Immunity

Regardless of whether Legenzoff can show a constitutional violation, Waller is entitled to qualified immunity.  Qualified immunity protects law enforcement officials who "'reasonably but mistakenly conclude that probable cause is present.'"  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The record clearly demonstrates that Waller acted as a reasonable officer during his investigation of Legenzoff and believed his actions to be lawful in light of the totality of the circumstances.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987).

### IV.    CONCLUSION

Accordingly, Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE:  March 27, 2013

8

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

<u>s/Bernadette M. Thebolt</u>
Case Manager