UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LEGENZOFF,

        Plaintiff,

v.

MICHAEL STECKEL, et al.,

        Defendants.
_____/

CASE NO. 2:11-cv-11405

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANTS DAVID CENTALA AND CITY OF ST. CLAIR SHORES' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants David Centala and City of St. Clair Shores' Motion for Summary Judgment. (Doc. 62). On April 4, 2011, Plaintiff James Legenzoff filed a complaint against six municipalities and seven individual police officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause. The complaint also sought § 1983 damages against the municipalities based on their unconstitutional practice, policy, or custom of inadequate training and/or supervision of the officers under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Legenzoff abandoned his Monell claims. (Doc. 71 at 1). For the reasons stated below, the Court **GRANTS** Defendants David Centala and City of St. Clair Shores' motion.

    **I.**    **STATEMENT OF FACTS**

        **A.**    **Background**

This case arises out of the misidentification of Plaintiff James Legenzoff as the "Suave Senior," an elderly man allegedly responsible for numerous thefts around the

Detroit area. The thefts had the same *modus operandi* and began in the summer of 2007 in Warren, Michigan. Witnesses described the suspect as a white male in his seventies with white hair, about 5'10" and weighing 170 pounds. (Doc. 1 at 6). The suspect allegedly knocked on the victim's door and identified himself as a neighbor. (Id. at 7). He then invited himself in for coffee, and after excusing himself to use the bathroom, stole money or personal items from the house. (Id.)

On August 29, 2007, Warren police questioned Legenzoff at a truck dealership. (Id.) They obtained his driver's license photograph and presented it to witnesses who were unable to identify him as the perpetrator. (Id.) His photograph aired on the news. (Id.) When similar larcenies occurred in St. Clair Shores, Warren police shared Legenzoff's photograph and information with St. Clair Shores police. This information eventually made its way to Canton Township, Redford Township, Fraser, Roseville, and Harper Woods.

### B. St. Clair Shores Incidents

In January 2008, Betty McKee filed a police report with the St. Clair Shores Police Department detailing her encounter with a man whom she invited in for coffee after he claimed to know her husband. (Doc. 62, Ex. E). The man identified himself with the last name Meyers. After he left, McKee noticed $130 missing. McKee described the man as in his seventies, 5'8" weighing 170 pounds with gray hair. Detective Clinton Rice investigated the complaint. Although fingerprints were removed from the suspect's coffee cup, they were not suitable for identification and the case was closed.

On August 18, 2008, St. Clair Shores police received another complaint from Alice and Joseph Boutrous regarding a man who had parked his car four houses away and then asked to come in for coffee. (Doc. 71, Ex. 16). They described the man as a white male in his 60s, 5'9" weighing 190 pounds. The man dressed nicely. After talking with Alice and Joseph, the man asked to use the bathroom. However, Alice noticed him exiting the bedroom instead. The couple reported missing $40.

Detective David Centala was assigned to investigate the Boutrous complaint. (Doc. 62 at 3). He first checked for crimes with a similar *modus operandi*, during which he discovered a Warren report nearly identical to the incident he was investigating. The report identified James Legenzoff as the suspect. Next, he created a random photo array through the CLEMIS system containing Legenzoff's photo and photos of elderly men of similar appearance as described by Joseph and Alice. The array was administered separately to them. Joseph was unable to identify a suspect, but Alice identified Legenzoff within seconds.

In furtherance of his investigation, Centala attempted to locate Legenzoff. He did so through Legenzoff's work, but Legenzoff refused to cooperate. On August 26, 2008, Legenzoff appeared at the police station with an attorney to provide a statement. Although Centala intended to further pursue the case, Alice Boutrous declined to testify based on health concerns. The case was closed on September 10, 2008.

### C. The Warrant and Arrest

On or about October 2008, McKee saw a news story detailing the arrest of Legenzoff in Canton for similar crimes. McKee then contacted Centala and informed him of the story. Centala reviewed McKee's prior complaint and generated a photo

array using the CLEMIS system, which contained Legenzoff's photo along with other elderly men of similar appearance. Before viewing the array, McKee, and previously the Boutrous couple, read and signed a statement that indicated:

> You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as it is to identify guilty parties. Do not discuss this case with other witnesses, or indicate in any way that you have identified anyone in this photo line-up.

(Id. at Ex. D). McKee identified Legenzoff from the array in about fifteen seconds. Centala submitted a warrant request detailing the circumstances of the crime and the witness identification. (Id. at Ex. G). Legenzoff was charged and released on bond. At the preliminary hearing, McKee again identified Legenzoff, but he was released after the fingerprints from the coffee cup did not match.

### D.  The Complaint

On April 4, 2011, Legenzoff filed a 42 U.S.C. § 1983 complaint against the municipalities and individual officers alleging unlawful arrest, use of unduly suggestive identification procedures, and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments.

### II.  STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52

(1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

### III.  ANALYSIS

Legenzoff's claims are dependent upon whether sufficient probable cause existed to request a warrant. See Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (reversing district court's denial of qualified immunity because defendants had probable cause to arrest plaintiff). He argues questions of fact exist regarding the validity of the identification procedures along with the constitutionality of the steps taken, or lack

thereof, to determine probable cause. Centala raised the defense of qualified immunity, which also turns on the sufficiency of probable cause.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005) (quoting United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993)). To determine whether probable cause exists, the court must examine the totality of the circumstances and whether the facts and circumstances known to the officer were "sufficient to warrant a prudent person" to believe that the individual committed the offense. Hinchman v. Moore, 312 F.3d 198, 205-06 (6th Cir. 2002).

A claim of unlawful arrest "requires a plaintiff to prove that the arresting officer lacked probable cause." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). In order to prevail on a claim of malicious prosecution under § 1983, the plaintiff must show four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." [citations omitted]. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. [citations omitted]. Third, the plaintiff must show that, "as a consequence of a legal proceeding, "the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. [citations omitted]. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. [citation omitted].

Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010).

Public officials engaged in the performance of discretionary functions are entitled to qualified immunity from civil liability to the extent "their conduct does not violate clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This immunity

6

protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  An official who violates a clearly established right may not rely on the defense of qualified immunity.  See Camreta v. Greene, 131 S.Ct. 2020, 2030-31 (2011).  Thus, in order to overcome such a defense, a plaintiff must demonstrate that a constitutional violation has occurred and that the right was clearly established at the time it was violated.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

Legenzoff sets forth two theories in order to demonstrate a constitutional violation: (1) Centala acted without probable cause in seeking a warrant and (2) Centala administered an unduly suggestive photo array.  Regarding the photo array, Legenzoff asserts it was unduly suggestive because McKee's identification was tainted by the news report.

### A.  Probable Cause

The right to be free from warrantless arrest without probable cause is an actual constitutional right clearly established under the Fourth Amendment.  See Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000).  Therefore, Legenzoff must demonstrate Centala did not have sufficient probable cause when he requested the warrant.  In support of his argument of insufficient probable cause, Legenzoff identifies numerous errors: (1) McKee had previously identified Legenzoff, (2) McKee had already seen Legenzoff in the news, (3) Centala provided feedback to McKee after she made the identification, and (4) Centala refused exculpatory evidence.

Contrary to Legenzoff's argument, the fact that McKee previously identified him and recognized him in the news does not negate probable cause.  The question is whether, under the totality of the circumstances, the process used, even if unduly

suggestive, created a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 109-14 (1977); see also Mikel v. Thieret, 887 f.2d 733, 738 (7th Cir. 1989) (holding that victim's identification of suspect in a photo array after seeing the suspect in the newspaper did not create a substantial likelihood of misidentification). Legenzoff also relies on Good v. Curtis, 601 F.3d 393 (5th Cir. 2010). However, unlike the officer in Good, Centala did not manipulate any photograph and never conducted a live array. McKee recalled the similarity in behavior and appearance of the suspect that had entered her house. As discussed above, the fact that McKee had already seen Legenzoff's picture on the news did not lead to a likelihood of misidentification, nor does her prior identification several months earlier. Centala acted reasonably under the circumstances in relying on eyewitness identification. He had no reason to doubt McKee as a witness. "Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect." Phillips v. Allen, 743 F. Supp. 2d 931, 941 (N.D. Ill. 2010). Furthermore, Centala conducted research of prior police reports to make sure Legenzoff was the same suspect they identified. He was entitled to rely on this information. In addition, because "eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999). Thus, it is of no import that the warrant request was based solely on the eyewitness statement. The fact that Centala did not mentioned that Legenzoff offered an alibi is irrelevant. Centala believed to be operating according to legitimate procedure, and there is no evidence he intentionally omitted anything in order to falsely obtain a warrant against Legenzoff.

8

Contrary to Legenzoff's argument, there is no authority that prohibits officers from providing post identification feedback to witnesses. Legenzoff cites no authority in support of his argument. There is nothing to suggest that Centala's confirmation that she picked the correct suspect retroactively affected McKee's decision. Indeed, all witnesses interviewed by Centala read and signed a statement informing them of their duty to make a fair assessment of the photo array. Moreover, the expert report relied upon by Legenzoff is not entitled to any controlling weight. (Doc. 71 Ex. 12).

Finally, Centala's refusal to investigate Legenzoff's alibi is not fatal to a finding of probable cause. See Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000) ("[F]ailure to pursue a potentially exculpatory lead is not sufficient to negate probable cause."). Centala was entitled to disbelieve Legenzoff's alibi that he was in a different location than were the crime took place. See Gomez v. Atkins, 296 F.3d 253, 264 (4th Cir. 2002) ("A reasonable officer, however, was not obliged to credit [defendant's] exculpatory story."). Once an officer establishes probable cause through a reasonably credible witness, he is "under no duty to investigate further or to look for additional evidence which may exculpate the accused." Ahlers, 188 F.3d at 371.

Based on the totality of the circumstances, Centala had probable cause to support his warrant request based on his reasonable belief that Legenzoff was the perpetrator. McKee's identification and police report were consistent with the information Centala learned during his research of Legenzoff. Centala acted as a reasonable officer under the circumstances, and a reasonable jury could not find a lack of probable cause to support his request for a warrant.

### B.   Unduly Suggestive Identification Procedures

It is undisputed that Centala is a public officer and conducting a photo array falls within his discretionary authority as a detective.  Therefore, it falls upon Legenzoff to demonstrate Centala violated a clearly established "constitutional right of which a reasonable person in the official's position would have known."  Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).  In determining the issue of qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether the right was clearly established at the time of the alleged violation."  Conn v. Gabbert, 526 U.S. 286, 290 (1999).

Legenzoff failed to allege a deprivation of an actual constitutional right regarding his claim that the right to be free from unduly suggestive identification procedures is an independently actionable right under § 1983.  Legenzoff argues such a right exists and it is clearly established that "the manipulation of a photo line-up to produce a false identification from an eyewitness constitutes a violation of due process rights secured by the Fourteenth Amendment, which is actionable under 42 U.S.C. § 1983."  (Doc. 58 at 10).  Although Legenzoff relies upon Manson v. Brathwaite, 432 U.S. 98 (1977) and Good for support, his reliance is misplaced.  In Brathwaite, the Supreme Court held that witness identifications resulting from unduly suggestive identification procedures must be excluded from evidence, not that an independently actionable constitutional right to be free from such procedures exists.

In Good, the officer intentionally framed the defendant by manipulating his photo to resemble the victim's description.  Good, 601 F.3d at 396.  The officer told the

10

defendant that he was going to "fix" the photo by altering the lighting to make it match the "dark tan" skin described by the victim. Id. The defendant was identified in a live array and then convicted, but exonerated by DNA evidence nearly 20 years later. Id. at 397. More importantly, in determining the conduct of the officer was a violation of due process under the Fourteenth Amendment, the court in Good stated:

> The reason for the misidentification, we must assume at this summary judgment juncture, was [the officer's] concerted efforts to manipulate the photo. The Supreme Court's "suggestive array" suppression test announced in Manson v. Brathwaite, 432 U.S. 98 (1977), *is not designed for and does not apply in the context of a § 1983 suit following a DNA exoneration for a conviction derived from police conduct intentionally designed to procure a false identification by unlawful means.*

601 F.3d at 398 (emphasis added). It is clear the court did not rely on the unduly suggestive identification procedure in its conclusion. Instead, the court found the "concerted effort on the part of a police officer to 'frame' a suspect by manipulating a photo for a photo array to produce a false identification from an eyewitness constitutes a violation of the due process rights secured by the Fourteenth Amendment." Id.

Nowhere does the court endorse a right to be free from unduly suggestive identification procedures actionable under § 1983 independent of the exclusionary rule. Legenzoff cites no other authority in support of his argument that such a substantive due process right exists. Thus, because the right does not exist, it precludes the Court's inquiry regarding whether it is clearly established. See United States ex rel. Kirby v. Sturges, 510 F.2d 397, 406 (7th Cir. 1975) (holding that there is no such Due Process violation resulting from unduly suggestive identification procedures until it is used against a defendant in a criminal trial); Gregory v. City of Louisville, 444 F.3d 725, 747 (6th Cir. 2006) (noting that "[i]t is true that an unduly suggestive identification does

11

not, in and of itself, violate constitutional rights" and "the *prosecution's use of the identification at trial is a necessary intervening act for injury to occur and liability for any party to attach*") (emphasis added); Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000) ("In the context of unduly suggestive arrays, only a violation of the core right – the right to a fair trial – is actionable under § 1983."). Having concluded the right to be free from unduly suggestive identification procedures is not a substantive due process right, the Court need not address whether Centala's photo array was unconstitutional for purposes of Legenzoff's § 1983 claim.

### C. Qualified Immunity

Regardless of whether Legenzoff can show a constitutional violation, Centala is entitled to qualified immunity. Qualified immunity protects law enforcement officials who "'reasonably but mistakenly conclude that probable cause is present.'" Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The record clearly demonstrates that Centala acted as a reasonable officer during his investigation of Legenzoff and believed his actions to be lawful in light of the totality of the circumstances. See Anderson v. Creighton, 483 U.S. 635, 641 (1987).

### IV. CONCLUSION

Accordingly, Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE

DATE: March 27, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt  
Case Manager